IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| SCANDINAVIAN BUNKERING, A.S. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. G-13-269 |
| | § | |
| NORFIELD SHIPPING, A.S. | § | |

### REPORT AND RECOMMENADTION

Before the Court, by referral from the Honorable Gregg Costa, United States District Judge, is the "Motion to Vacate Attachment" of Defendant, Norfield Shipping, A.S. (Norfield); the Motion seeks the vacatur of the Rule B attachment authorized by this Court in favor of Plaintiff, Scandinavian Bunkering, A.S. (Scandinavian). The Motion has been thoroughly briefed and argued and it is now ripe for a determination.

Norfield owns the three vessels involved in this lawsuit: the M/V MALENE OSTERVOLD, the M/V OCEAN PEARL and the M/V BERGEN SURVEYOR. At all times relevant to this case, the vessels were time chartered to Reservoir Exploration Technology (RXT). The master and crew of the vessels were employed by Vestland Crew, A.S. (Vestland). Scandinavian and Norfield are both Norwegian corporations.

Scandinavian is a provider of fuels to vessels and uses various suppliers to deliver fuel ordered by its customers to the customers' vessels. Scandinavian had a contract with RXT to provide fuels to its vessels. On five occasions, RXT ordered fuel for the MALENE or the OCEAN PEARL in Killybegs, Ireland. On each occasion, Scandinavian had the fuel delivered to the vessels by Donegal Oil Company (Donegal). Scandinavian paid Donagal for the fuel. On each occasion, the master or chief engineer of the crews signed for Donegal's delivery of the fuel. On

the back of Donegal's delivery receipts are printed 17 "Conditions of Sale."[1]  "Seller" is not defined or identified in the Conditions, however, condition 15 provides that "The Seller's other usual terms and conditions of sale also apply and acceptance of the goods will be treated as an acceptance of the Seller's Conditions."

RXT did not pay Scandinavian for the fuel it provided from Donegal, in fact, it filed for bankruptcy.  Scandinavian filed a claim in the bankruptcy proceeding.  In addition to filing its bankruptcy claim, Scandinavian sued Norfield in this Court on July 30, 2013, to recover for the fuel delivered by Donegal to Norfield's two vessels, the MALENE and the OCEAN PEARL.  Scandinavian alleged the indebtedness to be about $1,400,000.00.  In an effort to establish *in personam* jurisdiction over Norfield, Scandinavian sought and obtained a warrant to attach the BERGEN SURVEYOR while it was docked in Galveston and the vessel was attached that same day by the United States Marshals Service.

Norfield posted security in the form of a Release Bond issued by Aspen American Insurance Company in an amount in excess of $2 million dollars and the BERGEN SURVEYOR was released on August 6, 2013.  Norfield has now moved to vacate the attachment.  Norfield alleges, *inter alia*, that Scandinavian does not have a cognizable maritime claim against it.

Scandinavian's defense of its claim is straight-forward.  According to Scandinavian, its contract with RXT does not "preclude the possibility" that it also has a contract for the fuel with Norfield because the fuel was provided to Norfield's vessels; Norfield's employees signed the

---

[1] The documents at issue indicate that they are part of a four-part form: "Blue-Copy Invoice   White-Invoice   Green-Copy Invoice   Yellow-Advise/Deliver Note."  This Court assumes that the documents relied upon by Scandinavian in this case are the yellow delivery notes since Scandinavian refers to them as "Bunker Delivery Receipts."

"Bunker Delivery Receipts"; and, as a result, the "Conditions" on the back of those receipts bound Norfield to Scandinavian's "other Seller's Conditions," applicable by virtue of its agreement with RXT. The "other Seller's Conditions" defined "Customer" as including "the Vessel, her master, owners, operators, charterers (and) any other party benefitting from consuming the product . . . all of whom shall be jointly and severally liable as Customer under each agreement," and provided that Scandinavian had the "right to proceed against the Customer, any third party or the vessel in such jurisdiction as (Scandinavian) in its sole discretion sees fit" to secure payment on any amount due from the Customer.

While Scandinavian's argument is certainly creative, the Court agrees with Norfield that Scandinavian's proposed theory is unpersuasive. Scandinavian's contract to provide fuel was with RXT, not Norfield. Under the charter, RXT was, as is typical, obligated to provide and pay for all fuel, 8 BENEDICT ON ADMIRALTY, § 9.02 [C][1][B], and the crew was to assist with fueling only "if required by the Charterer" and if authorized at the port of call. Therefore, when a crew member signed a delivery receipt, he was acting for RXT, as a borrowed servant at the time, not his employer. Cf. <u>Horn v. Cia De Navigacion Fruco, S.A.</u>, 404 F.2d 422, 433-34- (5th Cir. 1968) (The Captain occupies a dual role during the term of a time charter)   Moreover, it was not even a Norfield employee who signed any delivery receipts; the crews were employees of Vestland. Although Scandinavian believes Vestland is an alter ego of Norfield, even it were true, Norfield correctly points out that any crew member's act of signing the delivery receipts would still be an act done for the benefit of RXT. Consequently, Scandinavian's tortured argument that somehow Norfield became liable to pay RXT's debt because Scandinavian's never-disclosed general terms and conditions designated Norfield as Scandinavian's "Customer" has no

3

merit.  A contract between two parties cannot be binding on a non-party who never agreed to the contract.  <u>Adams v. Unione Mediterranea Di Sicurla</u>, 364 F.3d 646, 652 (5th Cir. 2004) (citing <u>EEOC v. Waffle House</u>, 534 U.S. 279, 294 (2002)).  <u>Equatorial Marine Fuel Management Services v. MISC Berhad</u>, 591 F.3d 1208 (9th Cir. 2010), is a remarkably similar case to the case at bar.  In <u>Equatorial</u>, MISC had a contract with MA Link, a bunker trader, for the procurement of fuel for its vessels.  MA Link used Equatorial to supply fuel to MISC's vessel.  Equatorial, in turn, had the fuel delivered by Grandeur Trading & Services.  MISC paid MA Link for the fuel, but MA Link never paid Equatorial.  After MA Link became insolvent, Equatorial sued MISC for the amount due it for the fuel from MA Link.  To establish an alleged contract with MISC, Equatorial submitted internal documents which indicated MISC was its "buyer."  The Ninth Circuit affirmed the District Court's vacatur of a Rule B attachment of an MISC vessel because "these documents, which were never sent to MISC, do not show that MISC was even aware that Equatorial was the bunker supplier, let alone that it entered a contract with Equatorial.  At most, these documents show that Equatorial *thought* it was contracting with MISC.  But contracting, like dancing the tango, takes two: one party's belief that there was an agreement is not enough."  <u>Id</u>. at 1211. (emphasis added)   Here, Scandinavian is using a variation of Equatorial's argument in an effort to conjure up a contract with Norfield; it's attempt to do so should meet with like success.

Scandinavian seems to argue that the general principle of maritime law, which recognizes that the master of a vessel is "presumed to have authority to procure necessaries on the vessels's account," can sustain the attachment.  Scandinavian asserts that since the fuel was used in furtherance of the crews' obligations to navigate the vessels under the charter the attachment is

permissible. Scandinavian's reliance is misplaced, and its premise is unsound. The general principal may apply where the necessaries are provided to the same vessel arrested, as done in the cases cited by Scandinavian, but, in the opinion of this Court, it cannot be used to find the existence of a maritime lien against the vessel owner's entire fleet. In the event Scandinavian is making this argument, which is unclear from its response, it would be without merit.

This Court **FINDS** that no contract between Scandinavian and Norfield exists on the facts in this case that can justify the continuation of the Rule B attachment and, therefore, **RECOMMENDS** that the "Opposed Motion to Vacate Attachment and Dismiss Complaint or, in the alternative, for Summary Judgment" (Instrument no. 26) of Defendant, Norfield Shipping AS, be **GRANTED** insofar as seeks that the attachment be **VACATED**.

The Clerk **SHALL** send a copy of this Report and Recommendation to the Parties who **SHALL** have until **Friday, October 18, 2013**, to have written objections, filed pursuant to 28 U.S.C. §636(b)(1)(C), **physically on file** in the Office of the Clerk. The Objections **SHALL** be electronically filed and/or mailed to the Clerk's Office at P.O. Drawer 2300, Galveston, Texas 77553. Failure to file written objections within the prescribed time **SHALL** bar any Party from attacking on appeal the factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

**DONE** at Galveston, Texas, this \_\_\_\_3rd\_\_\_\_ day of October, 2013.

_____
John R. Froeschner
United States Magistrate Judge